*Foti Fuels, Inc. v. Kurrle Corp.*, No. 326-5-09 Wncv (Teachout, J., February 4, 2015)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

| | |
|---|---|
| **SUPERIOR COURT** | **CIVIL DIVISION** |
| **Washington Unit** | **Docket # 326-5-09 Wncv** |

**FOTI FUELS, INC. and ROBERT A. FOTI,**
    **Plaintiffs**

    **v.**

**KURRLE CORPORATION, PAYJACK, LLC, and
JAMES J. KURRLE,**
    **Defendants**

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER

This matter came before the Court for final hearing on the merits on November 24 and 25, 2014 and January 6, 2015 on remaining claims following remand from the Vermont Supreme Court as set forth in *Foti Fuels, Inc. v. Kurrle Corp.,* 2013 VT 111. Plaintiffs are represented by Attorney Jennifer E. MacDonald. Defendants are represented by Attorney L. Brooke Dingledine.

The claims on remand included the Defendant Kurrle Corporation's counterclaim against Plaintiff Robert A. Foti for breach of a Non-Competition Agreement and claims of breach of the covenant of good faith and fair dealing. Oral rulings were made on the record on November 25th resulting in judgment for Plaintiffs on Defendants' breach of covenant claims. This decision addresses the remaining claim, which is Defendant Kurrle Corporation's counterclaim for breach of contract related to the Non-Competition Agreement.

### Findings of Fact

Beginning in the 1970's, Robert A. Foti owned several businesses related to sale and distribution of fuel in central Vermont, which he operated from a facility on Route 2 in Montpelier. As of 1999, he was planning a move to Arizona and entered into an arrangement with James and Lindsey Kurrle, a younger couple looking to buy a business. James Kurrle came to work for Mr. Foti as a business manager and in order to learn the business. The plan was that after Mr. Kurrle had received adequate training in managing the businesses, Mr. Foti would sell his business interests to the Kurrles. Mr. Kurrle began to work as Mr. Foti's manager in 2000 pursuant to this plan.

In 2003, Mr. Foti sold the Kurrles some, but not all, of his business interests. Just prior to the sale, he owned the following businesses:

1. A corporation entitled Foti Fuels, Inc. (FFI) that was a distributorship of gasoline products. It bought gasoline from major suppliers and distributed it wholesale to gas stations in Central Vermont;
2. A corporation entitled Foti Fuels Enterprises, Inc. (FFEI) that owned three tractor trucks and permits and was a contract hauler of petroleum products. FFI paid FFEI to transport the fuel that FFI sold and delivered to gas stations;
3. A gas station and convenience store on Route 2 that sold gas, kerosene, and on-road diesel from pumps; and
4. Four bulk tanks at the Route 2 facility that were leased to Ultramar, a home heating company, for the storage of home heating fuel.

Mr. Foti sold to the Kurrles (a) assets that included the real estate, gas station, convenience store, and bulk tanks, and (b) the stock of FFEI, the transportation company. He retained the gas distributorship business, FFI, which he continued to own, and which Mr. Kurrle continued to manage under a separate post-closing agreement that included other terms, such as a right of first refusal to purchase FFI and an agreement not to compete. The Kurrles owned and ran the transportation company, which they renamed Kurrle Transport, and the gas station, convenience store, and bulk tanks.

Pursuant to the terms of the post-closing agreement, Mr. Foti executed a Non-Competition Agreement in which he agreed that for five years from March 1, 2004, he would not do two things:

1. "not directly, or indirectly, as owner, officer, director, employee or otherwise, engage in or be interested in any business which is in competition with the business of retail sale of gasoline and/or the operation of a convenience store by the KURRLE CORPORATION, its successors or assigns." This was applicable within a 10 mile radius of the purchased property on Route 2 in Montpelier.
2. "not manage, finance, own or control any interest in any entity or person engaged in the transportation of petroleum products in the states of Maine, Vermont and New Hampshire."

Consideration for the whole five-year agreement was identified in the agreement itself as the sum of $30,000. The parties agreed on and incorporated a payment schedule that was requested by Mr. Foti as advantageous to him for income tax purposes as it spread his receipt of income out over the five years. Accordingly, payments of $6,000.00 each were made to Mr. Foti on the following dates: March 1, 2005, March 1, 2006, March 1, 2007, March 1, 2008, and April 9, 2009.

After purchase, the Kurrles added the sale of off-road diesel to the other products they sold at the gas station: gasoline, kerosene, and on-road diesel. On-road diesel is used primarily by certain types of trucks. Off-road diesel is used by large pieces of equipment such as excavators.

2

In 2005, approximately a year into the non-compete period, Mr. Foti urged Mr. Kurrle to expand into the home heating oil business. Mr. Foti had previously been in the home heating business himself, but had sold that portion of the business in 1997 to Ultramar. Now he urged Mr. Kurrle to get into it. Mr. Kurrle did not want to do so. The Kurrles had undertaken considerable debt to finance their purchase already and did not want to undertake more risk. Furthermore, they did not want to go into competition with Ultramar, which provided revenues to Kurrle businesses through lease payments for fuel storage and by contracting for transport of Ultramar wholesale fuel. They did not wish to lose the Ultramar transportation contract by competing with it. Mr. Foti brought up the proposal several times, and was not pleased with Mr. Kurrle's unwillingness to go into the home heating oil business.

Ellery Packard was the principal of EE Packard Enterprises, Inc., a construction company in the area that was engaged primarily in excavation work. The business bought gasoline at the pumps at the Kurrle station. It purchased diesel for its equipment by filling skid tanks on the back of trucks. The skid tanks could then be placed at work sites for refueling excavators. Mr. Packard decided around 2006 to build his own fuel distribution facility, at least in part so that he could directly meet his own company's equipment refueling needs but the business plan was broader than that. In order to justify the costs of the bulk tanks, he included in his business plan the delivery to the end user of home heating oil, on-road diesel, and off-road diesel.

He created Packard Fuels LLC, which sought zoning approval in 2006 for a facility 2.2 miles away from the Kurrle property. The plan was for an office, a vehicle shop, storage space, and a fuel distribution center to include four storage tanks for both on-road and off-road diesel, kerosene, and home heating oil.

Beginning in 2006 Ellery Packard consulted regularly with Mr. Foti, whom he had known for years and who took an active interest in the project. Mr. Foti began serving as an informal consultant and mentor with respect to the development of both the home heating and diesel fuel businesses. His role was to help get the business up and running. He reviewed plans for the storage tanks, talked with financing banks to provide assurance of the availability of fuel (through FFI as supplier), helped set up the computer program and the general ledger, talked with customers, provided training in ticketing and monitoring inventory, advised on pricing, set up the "degree-day clock," dispatched and drove trucks, and provided whatever help Mr. Packard needed. He was active in all phases of running the business. Starting in October of 2007, Mr. Foti was formally an employee of Packard Fuels LLC.

Some of Mr. Foti's work related to Packard Fuels's home heating business, and the Non-Competition Agreement did not prevent Mr. Foti from work in a home heating business. However, Packard Fuels's business activities also included selling both on-road and off-road diesel. Packard Fuels was not just meeting the equipment refueling needs of the Packard construction company; the business was engaged in delivering home heating oil and on-road and off-road diesel to other end users in pedal trucks. It did not sell diesel at fuel pumps where buyers could pull up and fill up, but rather sold at retail

3

and delivered on-road and off-road diesel, thereby eliminating the need for customers to drive skid tanks to a station such as the Kurrle station to fill up. Packard stopped purchasing diesel at the Kurrle station. Packard Fuels also sold and delivered diesel directly to at least two other identifiable customers, J.A. McDonald and Bolduc, which had previously purchased diesel at the Kurrle station. All three of them had had house accounts at the Kurrle station but no longer bought diesel fuel there.

When FFI purchased fuel wholesale at major terminals in Montreal, Burlington, or Albany, Kurrle Transport was its contract hauler to transport the fuel from the purchase location to the distributorship's customers. Once Packard Fuels entered the home heating oil business, Packard Fuels purchased its home heating oil through FFI as the distributor. Therefore, Kurrle Transport was to haul the oil to the Packard Fuels site, as it did for the other fuel FFI distributed. While this happened, there were times when Mr. Foti would authorize Packard Fuels to use Packard Fuels's own pedal trucks to pick up the fuel directly from Burlington, thereby bypassing the use of Kurrle Transport to do the hauling, and cutting Kurrle out of receiving revenue from the transport. Mr. Foti personally went on some of these transport trips.

FFI as distributor extended favorable credit payment terms to Packard Fuels that were more advantageous than were available to other businesses that bought from FFI. Most purchasers were required to pay FFI for product purchased within 10 days. Mr. Foti did not require this from Packard Fuels, but permitted it to pay whenever convenient. This provided financing that enabled Packard Fuels to have greater flexibility and to succeed as a business entity.

The Court finds that when Mr. Foti actively promoted the business of Packard Fuels, LLC, whether as consultant, unpaid helper, or employee between 2006 and 2009, it was engaging in a business that was in competition with Kurrle Corporation's "retail sale of gasoline/and/or the operation of a convenience store." Mr. Foti argues that diesel is not gasoline and therefor he was not violating the terms of the agreement. However, that is interpreting the provision in a technical manner that is inconsistent with its purpose and a common-sense interpretation of the clause.

When Mr. Foti sold the station to Kurrle Corporation, it was a gas station and convenience store that sold not only gasoline but kerosene and on-road diesel. Shortly thereafter it added off-road diesel. The clear purpose of the first provision of the Non-Competition Agreement quoted above was to remove Mr. Foti from working in any business that competed with the gas station for a period of five years so that the gas station operation as a whole would be able to be successful. Through Mr. Foti's work on behalf of Packard Fuels, he promoted a competing business that shifted business customers such as EE Packard Enterprises, J.A. McDonald, and Bolduc from purchasing diesel fuel at the Kurrle station to purchasing such fuel directly from Packard Fuels and having it delivered in pedal trucks to the customer's work site.

Mr. Foti argues that the market for diesel customers who buy from pumps at a gas station is a different market than the market for those who have diesel delivered by pedal

4

trucks to their on-site locations, and that therefore he was not working for a business that competed with Kurrle Corporation's service station. The evidence did not show that the market was different. The end users in the Route 2 area who needed either on-road or off-road diesel for trucks and equipment could buy it at a service station such as Kurrle's where they could fill up skid tanks or they could buy it from a business two miles down the road that would deliver it directly to the skid tanks on their job sites. Mr. Foti significantly assisted in the development of the Packard Fuels diesel delivery business that engaged in direct competition with Kurrle's by shifting customers away from buying at pumps to buying delivered diesel off pedal trucks. The customers and their needs and the product were the same. The market is not a different market just because the product is delivered in a different manner, at greater convenience to the customer. The effect was to compete with the business of the Kurrle service station. EE Packard Construction, J.A. MacDonald, and Bolduc all had maintained house accounts, billed monthly, with Kurrle which they used for the purchase of diesel, but no longer purchased diesel from Kurrle after Packard Fuels started delivering diesel in pedal trucks to their skid tanks.

The Court finds that when Mr. Foti acted on behalf of Packard Fuels, whether as consultant, unpaid helper, or employee, to transport, or authorize the transport, from Burlington to Montpelier, of home heating oil that Packard Fuels purchased from FFI, he was managing a company (Packard Fuels LLC) that was engaged in the transportation of petroleum products in Vermont in violation of the second term of the Non-Competition Agreement quoted above. Mr. Foti claims that the word "transport" in the Non-Competition Agreement only means transportation of fuel in large tractor trailer equipment and not in pedal trucks of the type used by Packard Fuels LLC, but there is nothing in the language of the Agreement that would justify such a limited use of the word and there is no evidence that both parties to the Non-Competition Agreement used the term with such a limited meaning. Rather, the purpose of the agreement was to protect the Kurrle transport business by precluding Mr. Foti from working on behalf of a competitor. Hauling petroleum products is exactly what Packard Fuels LLC did at Mr. Foti's direction while Mr. Foti was actively engaged in running Packard Fuels, and the effect was to reduce Kurrle petroleum transportation revenue and promote a competitor business at the expense of Kurrle Corporation.

Furthermore, Mr. Foti extended to Packard Fuels LLC financing terms for its purchase of home heating oil from FFI that were more favorable than were available to other customers. When Mr. Foti did this, he was supporting and promoting the success of Packard Fuels when one of its business activities (sale of diesel) was in direct competition with Kurrle Corporation.

Mr. Kurrle confronted Mr. Foti about being in violation of the Non-Competition Agreement by working for Packard Fuels. Mr. Foti acknowledged that it was wrong and put Mr. Kurrle in a difficult position, but told Mr. Kurrle not to worry about it. The Kurrles continued to pay the annual installments on the Non-Competition Agreement in order to meet their contractual obligations. There is no evidence that they acquiesced in Mr. Foti's activities or agreed to modify the Agreement or waived any claim for breach.

5

## Conclusions of Law

Based on the facts set forth above, the Court concludes that Kurrle Corporation has met its burden of proof to show breach by Mr. Foti of the Non-Competition Agreement in the manners described.

The Supreme Court held that "defendant is entitled to claim the return of the consideration" as a remedy for breach. The terms of the Agreement specify $30,000.00 as the consideration for the agreement. Mr. Foti argues that the consideration should be viewed as a series of annual amounts, and that any violation only took place during part of the contract term, but the $30,000 is expressed as consideration for the agreement as a whole. The schedule for payments, which was structured for tax benefit purposes, does not change the amount of consideration paid for the expected benefit of the contract.

Because the damages are a fixed amount, they are "reasonably ascertainable," entitling Defendant to prejudgment interest. *SEC America, LLC v. Marine Elec. Systems, Inc.*, 2011 VT 125, ¶ 14, 191 Vt. 541 (prejudgment interest mandatory where damages liquidated or reasonably ascertainable). Defendant Kurrle Corporation is thus entitled to prejudgment interest at the legal rate on each $6,000 installment from the date paid to the present.

## Order

Defendants' counsel shall calculate the amount due based on the foregoing and prepare a form of judgment. Plaintiff's counsel shall have five business days to file any objection.

Dated at Montpelier, Vermont, this _____ day of February, 2015.

_____
Hon. Mary Miles Teachout
Superior Court Judge

6